367 So.2d 752 (1978)
STATE of Louisiana
v.
Michael TRAHAN.
STATE of Louisiana
v.
Romela Grace TRAHAN.
Nos. 62484, 62485.
Supreme Court of Louisiana.
December 15, 1978.
Dissenting Opinion January 31, 1979.
Kenneth E. Badon, Lake Charles, for Michael Trahan. Oliver "Jackson" Schrumpf, Sumpter & Schrumpf, Sulphur, for Romela Grace Trahan.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Frank T. Salter, Dist. Atty., J. B. Jones, Jr., Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The dispositive issue of these consolidated appeals is whether the defendants were deprived of due process rights by the trial court's denial of their pre-sentencing request for disclosure of allegedly untrue prejudicial information in their pre-sentence investigation reports, in order to afford them an opportunity to contradict or explain it.
We hold that the trial court was in error in denying this request. Therefore, we vacate *753 the sentences and remand for re-sentencing in accordance with the views expressed herein.
Context Facts
The defendants, Michael and Romela Trahan, pleaded guilty to distribution of three bags of PCP, La.R.S. 40:967, for $30 to two undercover agents on October 13, 1977, wherein the defendant wife helped her husband after the sale. The husband, Michael, additionally pleaded guilty to distribution of two lids of marijuana, La.R.S. 40:966, for $20 to an undercover agent five days later on October 18, 1977.[1]
Prior to sentencing, the defendants moved for disclosure of presentence information which is allegedly materially and prejudicially false in that it incorrectly indicates that the defendants had been involved in extensive criminal activity. The defendants also requested the opportunity to controvert false information and offer explanations as to any unfavorable hearsay material in such presentence investigation reports.
The trial court denied these requests, with an explanation to be noted below. It sentenced the husband to seven years imprisonment at hard labor on the PCP-distribution charge and to four years (concurrent) on the marijuana-distribution charge. It sentenced the wife to four years imprisonment on the PCP-distribution charge.
At the time of the offenses, the husband was 25 years of age, the wife 21, and they had a three-year-old daughter. They had no prior criminal records, and the husband held gainful employment. The husband was a lifelong resident of Cameron Parish.
Before sentencing the husband, the trial court asked him: "Is it not correct, Mr. Trahan, that you sold illegal drugs over a considerable period of time?" Trahan admitted that he had sold drugs, but stated it was only for two or three months. In stating the reasons for imposing penitentiary imprisonment, La.C.Cr.P. art. 894.1 (1977), of seven years, the trial court noted the seriousness of the offense, in that drug offenses may have many victims.[2]
In denying the defendant's requests for the disclosure of allegedly false information of extensive criminal activity and for an opportunity to contradict or explain it, the trial court stated that it had not considered any hearsay information in the pre-sentence reports.[3]
The pre-sentence investigation reports, which have been furnished under seal to this court, allege that the husband was the chief drug dealer in Cameron Parish and might have been so engaged for as long as eight years. The statements were primarily by law enforcement officials and consisted of conclusions rather than particulars. In the wife's pre-sentence report is included at least one conclusory evaluation that she was as deeply implicated as her husband.
The sentencing proceedings relating to a third person who pleaded guilty with the defendants to the PCP-distribution offense have been made part of the present records. In that case, the (same) trial court admittedly *754 based his sentence for this confederate upon the pre-sentence report. The substance of this report was that this confederate was just a follower of the husband Trahan and was not as dangerous as Trahan, who was allegedly chiefly responsible for the confederate's involvement. The present defendants' assignments of error include the contention that derogatory information in their co-defendant's pre-sentence report attempted falsely to place the primary blame for the incident upon the present defendant husband.
Legal Principles Applicable
In State v. Bosworth, 360 So.2d 173, 175 (La.1978), we reiterated: "Where, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false or which furnishes invalid information, the defendant must be given an opportunity to deny or explain such substantially significant misinformation. State v. Segers, 357 So.2d 1 (La.1978); State v. Underwood, 353 So.2d 1013 (La.1977)."
We there explained that the accused has a right to access to such records, upon request and appropriate allegation (as here), in order to avoid an excessive sentence improperly resulting from materially false information, with the court (after an in camera examination) to withhold only such information which is not relevant or which is protected by confidentiality.[4] 360 So.2d 175. We noted also that due process and fairness values require that the defendant be afforded an opportunity to deny or to explain prejudicial information otherwise secret to the sentencing judge himself. 360 So.2d 175. We finally noted that no full scale evidentiary trial is required at the sentencing hearing, at which the defendant is given an opportunity to deny or explain adverse information which is prejudicially false or misleading. 360 So.2d 176-77.[5]
Under these principles, the trial court was in error in denying the defendants' motions for disclosure and for an opportunity to contradict or explain substantially prejudicial information.
The state contends, however, that these principles are inapplicable because the trial court did not rely upon the hearsay in the pre-sentence investigation reports. The conscientious trial court stated with undoubted sincerity that it disregarded the hearsay reports of extensive criminal activity.
Nevertheless, the trial court was exposed to the allegedly grossly prejudicial misinformation, which the defendants had no opportunity to rebut. The record as a whole indicates a reasonable probability that the court may have been at least unconsciously influenced by such information, in imposing such heavy sentences upon first offenders for what on the record (unless one considers the pre-sentence reports) appear to be small transactions of an isolated nature. See State v. Underwood, 353 So.2d 1013, 1019 (La.1977). Due process principles previously cited require that the accused be afforded an opportunity to dispel such factors tending to justify severity of sentence, if false.

*755 Decree

For the reasons assigned, we vacate the sentences, and we remand these cases to the Cameron Parish district court for re-sentencing consistent with the views set forth above.
CONVICTIONS AFFIRMED; SENTENCES VACATED, AND REMANDED FOR RE-SENTENCING.
SANDERS, C. J., dissents.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
I do not find that a sufficient showing was made that the pre-sentence investigation report contained materially and prejudicially false information relied upon by the trial judge in imposing sentences to say that trial judge abused his discretion in refusing to allow defendants access to information contained in said report. La.Code Crim.P. art. 877. Accordingly, I respectfully dissent.
SUMMERS, Chief Justice (dissenting).
By his own admission the distribution of drug transactions which are the subject of this prosecution were not "small transactions of an isolated nature" as the majority finds. To the contrary, defendant Michael Trahan in answer to the trial judge's question stated that he had sold illegal drugs "about two or three months."
As I understand the statements of the trial judge, he did not consider any hearsay contained in the presentence reports and, in fact, did not complete a study of the report after defense counsel sought its disclosure. In sum, it may be readily inferred from this record that the presentence reports played no part in the determination of defendant's sentence. This is manifested in part by the fact that the trial judge did not impose a "heavy" sentence under the standards articulated by the majority in State v. Underwood, 353 So.2d 1013 (La.1977). He imposed a concurrent, rather than a consecutive, sentence; and the concurrent sentences did not exceed the maximum for the more serious offense. The seven-year sentence falls within the limits suggested in Underwood "not exceeding from five to ten years as a maximum." The sentence, therefore, was neither excessive nor heavy.
It is therefore an unnecessary infringement upon the sentencing prerogative of the trial judge and an encumbrance to the orderly administration of justice to set aside this sentence and order a hearing on the ground that this defendant was deprived of due process. The sole reasons assigned for this action of the Court was that defendant was denied access to a presentence report which played little if any part in the sentencing. And, assuming the contents of the report were untrue and unfavorable to defendant, that fact should not alter the perfectly reasonable sentences imposed here, sentences which could be justified on the simple basis of the offenses involved. La.Code Crim.Pro. art. 877. As the trial judge observed, distribution of narcotics is not an offense against a single victim, the offense affects many victims and it is a menace to society as a whole.
NOTES
[1] As part of the agreement that he plead guilty, the state dismissed an additional charge of distribution in February, 1978, of PCP against the husband.
[2] In view of our disposition, we do not reach the substantial issue that, for the wife at least, the statement of considerations and the factual basis for deciding upon imprisonment did not satisfy the requirements of La.C.Cr.P. art. 894.1. The arrest report shows that the wife merely sealed the envelopes of PCP after her husband had sold them. See 894.1 B(4), (7), (8), (10), (11). Articulated reasons may (or may not) have disclosed a basis for sentencing of the wife to a substantial penitentiary term not indicated by the circumstances of her involvement in the isolated offense which was dominated by her husband.
[3] See Tr. 39-40: "* * * when you spoke to me yesterday, Mr. [attorney], concerning this, we had not yet completed studying the pre-sentence report, and after you spoke to me, I did not read them further. It certainly is not the Court's desire or intent to be influenced by hearsay and what other people might feel or think concerning these two defendants. In arriving at the sentence which the Court has arrived at, the Court has not considered any hearsay which may be contained in the pre-sentence reports. For these reasons, I am denying both motions."
[4] See La.R.S. 15:574.12 F. For instance, the evaluations by law enforcement officials were obviously not made with the intention that they be kept confidential. In case of doubt as to the lay persons, excision of their names would in almost every instance preserve confidentiality where derogatory information might be inferred by the trial court to have been given in confidence.
[5] As indicated in the appendix to Bosworth, the hearing is not a full-scale trial, with the state being required to prove its contentions of extensive criminal activity beyond a reasonable doubt. For instance, the testimony or report of the arresting officer might provide a reasonable basis for concluding extensive commercial drug operation by the husband from October, 1977 through February, 1978 (see footnote 1), providing the accused is given the opportunity to explain or rebut it. If (as the presentence report indicates, incorrectly the defendants claim) the husband had been engaged for several years in a drug operation, it is sufficient that the state show the factual basis for this contention rather than it being required to prove numerous transactions beyond a reasonable doubt: the accused must, however, be given the opportunity to contradict or explain this showing. See 360 So.2d 176, Appendix to Bosworth.